FILED 15 NOV '12 16:26 USDC-ORP

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND     DIVISION

_Jerry Alexander Mench_

_____
(Enter full name of plaintiff(s))

**Plaintiff(s),**

v.

_Legacy Heath System, Rodney T Helton_
_Bernardo Montoya, Christopher C. Silva,_
_Luke A. Heckathorn_
_____
(Enter full name of ALL defendant(s))

**Defendant(s).**

**3:12 - CV - 2075 ___ ST**

Civil Case No. _____
_(to be assigned by Clerk of the Court)_

**COMPLAINT**

Jury Trial Demanded
☑ Yes          ☐ No

## I.  PARTIES

List your name, address, and telephone number below, and the same information for each defendant. Make sure that the defendant(s) listed below are identical to those contained in the caption of the complaint. Attach additional sheets of paper if necessary.

**Plaintiff**          Name: _Jerry Mench_

Street Address: _1190 SW. 170th avenue #202_

City, State & Zip Code: _Beaverton OR. 97006_

Telephone No. _503-564-5282_

## VERIFIED COMPLAINT

JERRY MENCHU, by and through as representing himself "*pro se* litigant", respectfully alleges upon personal knowledge as to his own acts and status, and upon information and belief as to all other matters:

## PRELIMINARY STATEMENT

1. Plaintiff Jerry Menchu (hereinafter "plaintiff or Menchu") is an American, with resident in the state of Oregon, person of Hispanic culture growing up and raised in Guatemala with roots from Spain (National Origin) who is entitled to go into a place of public accommodation Title II without restrictions and to partake in a place legally known by the term of Title VI "program and activity'' as Legacy Good Samaritan Medical Center and to receive services free from discrimination without being singled out, branded, humiliated, segregated by threats and force, ordered to never come back from a hospital "a public building [10 CFR 420.2 Public building (5)]." holding several local businesses "a Mall" [ORS 161.015(10)] such as hospital services, café, gift and optical shop, other services open to the public, private offices etc.

2. Who is entitled to defend his civil rights through legal representation in the attempt to point out discrimination acts against him without receiving from Legacy, more false accusations and more severe punishment through more segregation being now trespassed to not enter any Legacy facilities in a whole due to retaliation by Legacy Health System who corporation owns Legacy Good Samaritan Medical Center and a chain of health centers throughout several states in the northwest.

3. Who is entitled to use as any other private citizen of this State, any territory owned by a municipality of this State of Oregon without intimidation due to retaliation by Legacy as to not pass in front of Legacy's premises "public domain" such as street and sidewalk, again affecting Menchu's rights under Title VI regulated by U.S department of transportation, interstate road tax and, disrupting a place that has been authorized by Congress to regulate for purposes of commerce "Discrimination against the Commerce Clouse" in order to ensure that the flow of interstate commerce (interstate commerce act) is free from local restraint.

4. Menchu is also being deprived of his rights given to him by the State of Oregon (real property interest) to provide interpreter services for Legacy's English deficient patients insured by Medicaid and Medicare through managed care organization such as CareOregon and Oregon Worker's Compensation Division who Menchu is a business associate obeying the Department of Consumer and Business Services of Oregon Worker's Compensation Division in respect of patient's rights through Oregon Administrative Rule OAR 436-009-0114. In connection with Oregon Revised Statute ORS 441.700

5. Menchu brings forth this action pursuant to Title VI of the Civil Rights Act, 42 U.S.C §2000d. Title II Civil Rights Act of 1964, 42 U.S.C. §2000a(a) *et seq.,* 42 U.S.C. §§ 1981, 1985, and 1988, and any penalty by violation of the commerce clause and respectfully request this court's pending jurisdiction over the state claims pursuant to ORS § 659A.403 Discrimination in Place of Public Accommodation of the State of Oregon and the common law torts of intentional and/or negligent infliction of emotional distress and any other violations discovered in trial.

## THE PARTIES

6. 1.- Plaintiff Jerry menchu is an interpreter that started his career in 1998, interpreting for LEP patients in several hospitals, clinics etc. through several contracted interpreter agencies in the Portland metro area in Oregon until he decided to open his own agency in 2006. Through his interpreting services over the years he would attend on regular bases interpreting sessions at Legacy health System an Oregon based business with several hospitals and clinics in the state of Oregon and in Washington. Plaintiff Jerry Menchu is of a National Origin because of Latino Culture growing up, raised and educated in Guatemala Central America black hair and brown eyes with Mediterranean features and Spanish accent who resides 1190 SW 170th Avenue, Beaverton, Oregon. 97006.

7. Defendant Legacy Health System LLC Is a non-profit public benefit corporation as in ORS 65.001(37) an organization which receives a substantial part of its support from a governmental unit and/or the general public with a Fiscal Year Ending: Mar 31, 2011 and Total Revenue $170,558,435 and with more than 5,000 employees with headquarters office location and with GEORGE J BROWN MD C/O 1919 NW LOVEJOY STREET PORTLAND, OR 97209 in Portland, Oregon. Legacy properties consist of a chain of six medical centers encompassing Physical Therapy & Rehab, Hospitals, Primary Care Clinics, Special Clinics, Laboratory Patient Centers, Drug Testing Sites, Imaging Locations, Hopewell House Hospice, Pharmacies, Flower Shops, Restaurant Café's, and in the condition of being joined with other buildings property owned by Legacy as medical buildings encompassing private medical offices and many other private offices such as corporations, etc. owned by others than Legacy. Also

3/23

other properties owned or under contract with the purpose of offering one or a few

services by legacy in properties owned by other throughout the state of Oregon and

Washington.  Legacy also holds partnership with Linfield-Good Samaritan School of

Nursing a part of Linfield College a non-profit public benefit corporation with

headquarters in Oregon.

8.Defendant Rodney T. Hutton also Known by Legacy as "Rodney" officer #23 is a

security guard  employed by Legacy Health System. At all material times, Hutton was

working within the course and scope of his employment and/or agency with Defendant
"Legacy".

9. Defendant Bernardo Montoya  also Known by Legacy as "Bernardo" officer #204 is a

security guard  employed by Legacy Health System. At all material times, Montoya was

working within the course and scope of his employment and/or agency with Defendant
"Legacy".

10. Defendant Christopher C. Silva also Known by Legacy as "Chris Silven" is a security

manager employed by Legacy Health System. At all material times, Silva was working

within the course and scope of his employment and/or agency with Defendant "Legacy".

11. Defendant Luke A. Heckathorn,  also Known by Legacy as "Heckathorn" is a

security manager employed by Legacy Health System. At all material times, Heckathorn

was working within the course and scope of his employment and/or agency with

Defendant "Legacy".

4/23

12. Defendant "Jane Doe" is an employee of Legacy's possibly known as "Kila Mitchell" who possibly conspired with the above mentioned security to violate plaintiff's civil rights and to be left as "Jane Doe" until proven otherwise through trial.

## JURISDICTION AND VENUE

13.Jurisdiction of this court is invoked pursuant to and under 28 U.S.C. § § 1331 (federal question), 1343 (civil right), 1367 (supplemental), 2202 (injunctive relief), and 42 U.S.C. §§ 1981, 1985, and 1988 (civil rights).

14.Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391(b), in that Defendants maintain the establishment in question within this judicial district, and the majority of the events comprising the federal claims have taken place within this judicial district.

## FACTS

(As best to Menchu's memory knowledge and not word by word):

15. One day on January 24, 2011 Menchu was enjoying the services of the Lovejoy Station Café, inside of Legacy Good Samaritan Medical Center located at 1015 NW 22nd Avenue in Portland Oregon property of Legacy Health System.

16. Suddenly at approximately 12:30PM, two security officers approached Menchu; one Rodney T. Hutton, Known in Legacy Good Samaritan as "Rodney" officer #23 and the other Bernardo J. Montoya, Known as Bernardo officer #204.

17. Both officers asked Menchu to come out of the café and then Hutton said to Menchu that he can never come back to the hospital or he will be arrested and law enforcement would be contacted. Menchu was in a state of shock and also embarrassed because at the time, there were patrons in the Café that knew Menchu.

18. Menchu follows by asking why? Hutton said to Menchu that it was because he was bothering an employee. Menchu asked "who can this be" but no further information was given to Menchu. Menchu recalls that both of officers were looking down like if they were shameful of what they were doing. Menchu heard Montoya say to Hutton "I always see him around, minding his own business". At this time Menchu was a bundle of nerves. He recalls explaining to the security guards that this had never happened to him in his life and that there must have been a mistake and that he had a legitimate business and was performing interpreting services for clients through the state of Oregon's Medicaid and Medicare and Oregon's Workers Compensation in the hospital. Officer Hutton replied with a louder voice to Menchu "No you cannot come back and if you do then you will be arrested and we will call law enforcement". Menchu then asked who he can contact to get more information and then Hutton gave Menchu his supervisor's phone number.

19. Menchu then follows with an over the phone conversation with Christopher Silva, approximately thirty minutes later. Silva is a private security manager at Legacy Health System "Legacy Good Samaritan Medical Center" is owned by this last mentioned corporation". Menchu noticed that Silva was speaking to Menchu with a tone of voice that sounded like he was getting after a child. In the conversation Menchu noticed that the Silva said "I know you, you're that Spanish interpreter" this said with a smirking voice "Menchu has family roots from Spain" Menchu also noticed that the manager did not address Menchu with any incline of respect for example; by his first or last name or so called honorifics, which are titles or terms of respect "Mister" or "Sir" etc., the manager continued by expressing "You see, I remember you. You're that Spanish interpreter that on a previous occasion, I called to ask they not send you back anymore. This happened approximately three years ago. I asked them not to send you around because you were annoying an employee! You have no business hanging around here and if you put foot on hospital ground again, you will be arrested!" Menchu then asked "who are we talking about" and the manager replied "Kila Mitchell" (Mitchell is a white female that works at Legacy) and she recently said "I don't know what it is but he just freaks me out" and if you don't do anything about him, then "I am calling the cops". (He continues...) and if you come back here then you will be arrested.

Menchu recalls asking the following questions to Silva:

Jerry Menchu:  "Well what about the medical plaza with all my medical office clients?"

Christopher C. Silva: "Oh yes. I also spoke previously to the landlord of that building Mr.? (Menchu cannot remember the name Silva mentioned and why he was mentioning a different landlord.) He said that he was in agreement with my decision and that if you were to step foot on his property, then you will also be arrested.

Menchu: "So this means I can't put foot on the hospital or surroundings? And what if I need to use one of the medical private offices for treatment someday?"

Christopher C. Silva: "Sorry, no. You can't do that, and if you do you will be arrested."

You can come in the ER "I can't keep you from there" (with a regretful tone of voice).

Menchu: "But I still don't understand. What did I do, how about a warning?"

Christopher C. Silva: "This is your warning:

1)   If you step on the property you will be arrested.

2)   If you step on the property you will be arrested.

3)   If you step on the property you will be arrested.

4)   If you step on the property you will be arrested.

"If you step on the property you will be arrested. "You do understand this right?" If you step on the property you will be arrested."

Menchu: "Yes, I do understand. OK, I hear you. I understand!  Very well then "Good bye.""

20. January 27, 2011 Menchu phoned Silva a second time around 3 pm, and left him a message asking for information in writing to be faxed or mailed regarding the accusations of his Supposed accuser "Kila Mitchell" because Menchu was having problems with his company making other members concerned as to how this would affect the company and they wanted to know what events occurred that lead to all of this. Silva never called Menchu back and even though Menchu expressed he was in jeopardy of losing his job.

21. February 24, 2011 Menchu temporarily retained the services of a lawyer "Benjamin Falk" with the purpose to see if Legacy Health System administration knew about these acts against Menchu, or was it just one man's or woman's capricious  way to keep Menchu away from the hospital and if so, then to seek an appeal.

22. Menchu's lawyer after several failed attempts finally got in contact with Silva and then by Silva was instructed to speak with Legacy's legal adviser Anne Greer who Silva explained "she knows of the situation"

23. Menchu's lawyer then finds out through Greer that the accusations and punishment against Menchu have now become more severe than previously said, escalating from bothering an employee to stalking and harassing her. It also escalated

from "you cannot come back to the hospital" to a full trespass to not enter the entire Legacy properties (hospitals, clinics, parking, etc.) as well as three more separated accusations against Menchu: solicitation, loitering and spending long times logged on the public computer set in the Cafe. Also in the official report given to Menchu's lawyer, the hospital fails to explain the reasons behind the accusation of stalking and harassing and again officially does not disclose the name of the employee that by Legacy, was accusing Menchu. After this, Menchu's lawyer wrote back to Ms. Greer to express; "All these accusations Menchu totally and energetically denies."

24. March 11, 2011 Menchu was walking on the street that passes in front of Legacy Good Samaritan Medical Center at approximately 01:30 PM when he noticed all Legacy private security officers from this medical center come out and stand in all entrances of the two buildings that face each, other property of Legacy Good Samaritan.

25. When Menchu saw this it made him panic because he noticed the security officers were dressed in what he describes "like police in riot gear" coming out and looking towards Menchu from all entrances and with a threatening stance and glair

26. Menchu felt the urgency in walking quickly towards a public trolley and bus booth stop of Tri-met "the state of Oregon transportation bus and trolley stop" and then when he reached the booth stop that is located right on the corner next to Legacy Good Samaritan and turned around he notices that a private security officer had followed

Menchu on the public sidewalk and when he noticed Menchu turning back in the booth and watching him, the security officer then paused, looked at Menchu with a threatening stance and glair and then turned back and walked away.

27. Menchu noticed that the private security officer was "Bernardo Montoya" One of the officers that had participated with Hutton in telling Menchu to never come back to the area or they will call the police, back in January 24, 2011 because of bothering an employee.

28. Menchu then also noticed Hutton in the crowd between those security guards that came out to meet Menchu in the street and when noticed that Menchu acknowledged his presence, then again as in January 24, 2011 put his head down as in a state of shame.

29.- On October 6, 2011 and January 20, 2012 Menchu decides to make use of his right as a "Whistleblower" against the defendant Legacy Health System supposed discrimination acts and files complaints to the US Department of Health and Human Services (HHS) under Office of Civil Rights Division (OCR) and Oregon bureau of Labor and industries (BOLI) under The state Civil Rights Division (CRD) and on May 16, 2012 and November 8, 2012 receives from these agencies the public information requested "Case No. 2012-0847 EW" and "Menchu V. Legacy Health. No. STPARC 12012 20061"

On January 5, 2012 Menchu filed a report with the Portland Police Bureau No. 12-001435.

## AS AND FOR FIRST CAUSE OF ACTION

### (Federal Race Discrimination in Violation of 42 U.S.C. §2000a(a) et seq.)

30. Plaintiff repeats and realleges, as fully as if set forth herein at length, the facts contain in paragraphs 1-21 above.

31. 42 U.S.C. §2000a provides that all persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation without discrimination or segregation on the grounds of race.

32. Legacy is a public accommodation under Title II of the Civil Rights Act of 1964,

42 U.S.C. §2000a(b)(2).The operation of Legacy affects commerce within the meaning of 42 U.S.C. §2000a(c)(2).

33. Defendants denied plaintiff Jerry Menchu the full and equal enjoyment of the goods, service, facilities, privileges, advantages, and accommodations of Legacy Health System properties in a whole because of his race and national origin when Legacy employees created and maintained, a hostile environment bearing an anti-Hispanic racial treatment of segregation, while similarly situated non-Hispanic customers were, upon information and belief, given service with no such treatment.

34. Defendants have implemented a policy or practice by allowing such acts and therefore in agreement with, of denying Hispanic costumers, including plaintiff, on account of race and national origin, the full and equal enjoyment of the goods, services,

12/23

facilities, privileges, and accommodations of Legacy on the same basis as they make such available to non-Hispanic costumers. This policy has been carried out by denying Hispanic costumers, including plaintiff, equal treatment in terms of defendant's acts that were calculated, and had the effect of, discouraging Hispanic costumers, including plaintiff, from visiting Legacy.

35. 42 U.S.C. §2000a–2. Prohibition against deprivation of, interference with, and punishment for exercising rights and privileges secured by section 2000a or 2000a–

36. Defendants discriminated against plaintiff due to plaintiff's good faith opposition to unlawful practices when plaintiff decided to contact Legacy through his lawyer and because of this action plaintiff was given more adverse treatment and false accusations than previously said which violated §2000a–2.

37. Defendants' decisions regarding plaintiffs were motivated in substantial due to his opposition to unlawful discriminatory practices when plaintiff decided to harass and intimidate plaintiff by passing by on municipality property (streets) and was confronted with all of the security of Legacy Health System to harass and intimidate plaintiff which violated §2000a–2.

38. Defendants' creation of, and/or failure to prevent, the racially hostile environment for plaintiff constitutes unlawful racial harassment in violation of §2000a–2

§2000a–3. Civil actions for injunctive relief whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a–2

39. The plaintiff would like to request the court permanent injunction, restraining order against Legacy Health System and security personnel so to be able to walk the grounds of public domain such as streets and sidewalks freely without any harassment and intimidation whatsoever from these facilities own by Legacy Health System, because of being aggrieved, the plaintiff has never been able to walk by these streets again because of fear of a violent bodily harm against him by Legacy personnel and to intervene in such civil action.

40. Plaintiff alleges, upon information and belief, that defendant's conduct constitutes direct evidence in deliberate and substantial disregard of plaintiff Jerry Menchu's fundamental rights.

41. In addition, as direct and proximate result of defendant's conduct plaintiff has suffered and continues to suffer injury, loss, and damages in an amount according to proof and is entitled to recover from defendants money damages, cost and attorney's fees pursuant to §1988.

## AS AND FOR SECOND CAUSE OF ACTION

### (Federal Race Discrimination in Violation of 42 U.S.C. §2000d.et seq.)

42. Plaintiff repeats and realleges, as fully as if set forth herein at length, the facts contain in paragraphs 1-21 above.

43. 42 U.S.C. §2000d provides that no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

14/23

44. 42 USC § 2000d–4a – Legacy Health System entire corporation falls under the meaning of "Program or activity" and "program" defined in (3)(A) and (3)(A)(ii).

Defendant subjected plaintiff to harassment, discrimination, different treatment, retaliation and forever denied him the right to be included from participation in, be permitted the benefits of, and to not be subjected to discrimination under program or activity receiving Federal financial assistance, this includes the entire operation of this corporation and this traditionally includes the administration and security operations of a corporation. Also in violation to the tax-exempt section 501(c)(3) of the Internal Revenue Code were it is said; "eliminating prejudice and discrimination; defending human and civil rights secured by law" with in this we find through information and belief that defendant legacy Health System is tax exempt under section 501(c)(3) of the Internal Revenue Code.

## AS AND FOR A THIRD CAUSE OF ACTION

### (Federal Race Discrimination in Violation of 42 U.S.C. §1981 *et seq.*)

45. Plaintiff repeats and realleges, as fully as if set forth herein at length, the facts contained in paragraph 1-29 above.

41. §1981 provides that all persons shall have the same right to make and enforce contracts, and to do so freely and without race and national origin discrimination and harassment and intimidation.

46. Legacy is a place of business that offers members of the public the opportunity to contract for food, beverage, and services, and the attendant entertainment and social benefits thereto.

47. Moreover, Legacy accepts credit cards, and the plaintiff used his credit to pay for his food at legacy.

48. The swipe of the plaintiff credit card at Legacy constitutes a contract between plaintiff and his credit card company, Visa.

49. Upon information and belief, defendants intentionally denied him the same rights defendants afford to other non-Hispanic persons to make and enforce such contracts, by intentionally engaging in race and national origin discrimination against plaintiff in violation of §1981 by implementing, sustaining, and failing to monitor a pattern of practice of refusing to contract with plaintiff on equal terms when Legacy employee created race and national origin offensive and discriminatory treatments.

50. Upon information and belief, defendants' were motivated by racial and national origin animus when they refused to contract on equal terms with plaintiff on the basis of his race and national origin.

51. as direct and approximate result of defendants' conduct, the plaintiff has suffered and continues to suffer mental anguish, embarrassment , humiliation, and apprehension, and is entitled to compensation for such injuries as well as other damages to be proven at trial, and attorneys' fees pursuant to §1988.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Conspiracy in Violation of 42 U.S.C. §1985 *et seq.)*

52. Plaintiff repeats and realleges, as fully if set forth at length, the facts continued in paragraphs 1`-37 above.

53. Defendants' acts as alleged herein constitute racial and national origin discrimination under §1985 because, inter alia, two or more defendants conspired to deprive plaintiff Jerry Menchu of the actual protection, privileges, and immunities of the law.

54. Plaintiff witnessed "Bernardo Montoya" who saw the racial and national origin discrimination treatment against plaintiff, did nothing to change or stop it, and joined in on the ridicule, humiliation, harassment and intimidation.

55. Plaintiff witnessed defendant "Christopher Silva" who knew of the racial and national origin discrimination treatment before it happened against plaintiff and because of his rank in the corporation as security manager of both officers "Hutton and Montoya" and because his discriminatory treatment and disparate excuses to discriminate given to plaintiff over the phone by him, then Silva should be highly suspected of being the master mind of this discriminatory treatment against plaintiff " and did nothing to change or stop it, and joined in on the ridicule, humiliation, harassment and intimidation.

56. Plaintiff witnessed "Luke Heckathorn" who monitored the racial and national origin discrimination treatment against plaintiff and upon information and belief by stamping his own seal of approval, and because of his rank in the corporation as the manager of

both officers "Hutton and Montoya" and did nothing to change or stop it, and joined in on the ridicule, humiliation, harassment and intimidation.

57. Upon information and belief, defendants' conduct was deliberate and with reckless disregard to Mr. Menchu's rights.

58. Mr. Menchu was injured by this conspiracy and deprived of his rights and privileges under the law.

59. As direct and proximate result of defendants' conduct, plaintiff continues to suffer mental anguish, embarrassment, humiliation, and apprehension, as entitled to compensation for such injuries as well as other damages to be proven at trial, and attorneys' fees pursuant to §1988.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Violation of §659A.403 of the Oregon State Place of Public Accommodation Law.)

60. Plaintiff repeats and realleges, as fully as if set forth herein at length, the facts contained in paragraphs 1-44 above.

61. At all times Legacy was a business establishment within the meaning of Oregon State Place of Public Accommodation Law.

62. Defendants denied plaintiff equal enjoyment of the accommodations when they created and maintained, a hostile environment bearing an anti-Hispanic racial treatment of segregation that had the effect to make plaintiff and others of his race not welcome in Legacy.

63. Defendants intentionally discriminated against plaintiff on the grounds of his race in a business establishment by denying him the full enjoyment of the services, advantages, accommodations, facilities, and privileges provided to other persons.

64. Defendant's acts, and those of its employees, were undertaken with an improper, evil and retaliatory motive in conscious disregard of Plaintiff's rights.

65. As direct and proximate result of defendants' conduct, the plaintiff has suffered and continues to suffer mental anguish, embarrassment, humiliation, and apprehension, and is entitled to compensation for such injuries as well as other damages to be proven at trial.

66. Defendants' actions were done with malice, deception, and oppression and in reckless disregard for Mr. Menchu's rights as human being and guest of this State, for which an award of punitive damages in an amount to be set by the jury to punish defendant and deter such conduct in the future is appropriate along with all other relief to which he is entitled.

## AS AND FOR A SIXTH CAUSE OF ACTION

### (Common Law Tort of Intentional Infliction of Emotional Distress)

67. Plaintiff repeats and realleges, as fully as if set forth herein at length, the fact contained in paragraphs 1-50 above.

68. Defendants, by and through its employee or employees, engaged in the shockingly outrageous conduct alleged herein intentionally and maliciously for the purpose of causing Mr. Menchu to suffer humiliation, mental anguish, apprehension, and emotional

distress. When they decided to harass Mr. Menchu in the middle of the day when most patrons of the health system where out having lunch on their break and coming out to meet Menchu in the street by all security officers in a state of alert confronting Menchu who was peacefully passing in front of Legacy Good Samaritan and with a threatening stance stared at him and one officer (Montoya) by walking behind Menchu until discouraging him by making him leave the area owned by the municipality known as public property

69. Defendants' conduct is the type that cannot be tolerated in a civilized society.

70. Defendants' actions were in reckless disregard for plaintiff's feelings, dignity and fundamental rights as a human being.

71. As an actual and proximate cause of these outrageous acts by defendants conducted without due care or common decency, plaintiff suffered and continues to suffer humiliation, mental anguish, apprehension, and emotional distress.

72. In conducting the alleged acts herein, Legacy Health System employees were acting within the course and scope of their employment with Christopher C. Silva, Luke A Heckathorn, and the corporate defendants.

73. Christopher C. Silva, Luke A Heckathorn, and the corporate defendants are liable for the acts of their employees, agents, and/or franchises.

74. As direct, proximate, and legal result of the conduct of defendants' failure to meet the applicable standards of care due to one of its patrons, and in breach of their duty to

the plaintiff, harm, and damages, and therefore is entitled to recover damages from defendants, according to proof at trial.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### (Common Law Tort of Negligent Infliction of Emotional Distress)

75. Plaintiff repeats and realleges, as fully as if set herein at length, the facts contained in paragraphs 1-58 above.

76. Defendants owed plaintiff a duty to exercise reasonable care in their regulation and management of the Legacy Health System, including the duty to exercise reasonable care in hiring and/or supervising and/or contracting with those acting on their behalf and at their direction and under their name in serving customers at this establishment.

77. Defendants negligently breached their duty of care to plaintiff so as to fail well below the applicable standard of care and directly, proximately, and legally caused harm to plaintiff as described herein, specifically by failing to comply with the federal and state civil rights laws that mandate equal treatment and prohibit racial and national origin discrimination, and by failing to adequately hire and/or supervise and/or contract with those acting on their behalf and at their direction and under their name in serving customers at this establishment.

78. Defendants knew or should have known that their failure to exercise due care during the times in question alleged herein, and their failure to train and supervise employees or agents, or their failure to conduct due diligence in the screening of their franchisees or agents, caused Mr. Menchu severe emotional distress.

79. In conducting themselves as alleged herein, Legacy employees were acting within the scope of their employment with Christopher C. Silva, Luke A Heckathorn, and the corporate defendants.

80. Christopher C. Silva, Luke A Heckathorn, and the corporate defendants are liable for the acts of its employees, agents, and/or franchisees.

81. as direct, proximate, and legal result of the conduct of defendants' failure to meet the applicable standards of care due to one of its patrons, and in breach of their duty to the plaintiff, Jerry Menchu has suffered and continues to suffer injury, mental anguish, severe emotional distress, harm, and damages, and therefore is entitled to recover damages from defendants, according to proof at trial.

## JURY DEMAND

82. Plaintiff hereby demands trial by jury of all issues properly triable thereby.

## PRAYER FOR RELEAF

WEREFORE plaintiff Jerry Menchu prays for judgment against defendants as follows:

1. Issuing declaration that Defendants have violated the Plaintiff's Title II rights under Act of 1964, 42 U.S.C. §2000a, *et seq.,* his rights under 42 U.S.C. §1981, *et seq.,* and his rights under 42 U.S.C. §1985, *et seq.;*

2. Enjoining defendants, their officers, employees, successors, franchisees, agents and all other persons in active concert or participation with any of them, from engaging in any act or practice which, on the basis of race and national origin, denies or abridges any rights secured by the Civil Rights Act of 1964, 42 U.S.C. §2000a, *et seq.,* the rights

under 42 U.S.C. §1981, *et seq.,* and the rights under 42 U.S.C. §1985, *et seq.* to prevent defendants from so acting in the future;

3. Awarding plaintiff damages incurred as result of these violations to his federal, state, and common law rights;

4. Awarding punitive damages for the egregious conduct that no civilized society can tolerate;

5. Awarding §1988 attorneys' fees;

6. Awarding plaintiff's cost and disbursement; *and*

7. Granting such other and future relief as the Court may deem just, proper and equitable.

Dated:     Portland, Oregon

December 15, 2012

**Contents thereof though be true based upon my knowledge, except as to matters stated to be alleged on information and belief, and to those matters I believe them to be true**

**Jerry Menchu**

Signature